Kevin Bragg, Plaintiff's Appellant, Lowry T.L. N.G.O. May it please the Court, I would like to address in part basically what this case presents. We've got an interesting cross-section of law, I think, of between the contractual status of a student to a public charter school versus the status of just a P.O.T. Why is there a contract with a charter school? Because it's a charter school, unlike a regular public school. Do you agree that if it were a regular public school, there would be no contract? I would agree. If it was a public school, there would be no contract. But because it's a public school, that's what the statute says. The statute uses both district schools and charter schools, connected by an order when it authorizes certain kinds of fees to be collected. The fees that were collected here are authorized by statute, and the charter school has exactly the same rights as the public school. Why does that make this a silly case? The difference is that a public charter school exists by contract. The charter school only exists after it applies to a statutory scheme with a sponsoring school, a public school. So you're not a party to that contract? But it is arguable that the students are third-party beneficiaries to that contract. But for students being at a public charter school, it would not exist. So the other distinguishing factor is that it's due. What does your client have to do to be admitted to this school? So the client has to apply for enrollment and be accepted. And does this charter school have a particular mission? Is it a specific school? The charter school is represented and asked, well, actually, specifically through which charter school represented it, said that it would provide a better education to smaller classrooms, higher test scores, and basically provide a better education than what your regular public school would do. So you're not suing it for a bad education. You're suing it for a bad education. So what's the contractual promise that you believe the charter school made to your clients, including to Danny? I'm not sure why. Danny, you're entitled to enforce. So the contractual promise is a file that the student had. The promise is to have an education environment free from harassment. It's a student's handbook. It tells the students they're supposed to behave in a certain way. Does it say that? I've looked at the handbook. Where in that handbook is there a promise that we will protect all of you from bad consequences, from acts by other students? It belongs to every principal in American jurisprudence that schools have the facility and supervisory authority over its students. So it's not just used to control for the kids? Absolutely. It's got to be controlled for conduct that schools see. I'm not just suing them for you. You're suing them for breach of contract. You're not saying a charter was committed unaligned with respect to academic inflection. I'm focusing now on your claim that there's some sort of contract to abide by Title IX. Tell me where in that handbook there's a promise that we will abide by Title IX. I don't believe that it's specifically articulated in the handbook that they need to abide by Title IX. I think if you look at the statutory scheme, ORS 338.155, requires all charter schools to abide by all federal law. The contract between the charter school and the charter school district requires that it be in its contract that they abide by all federal law. Let me change direction on this a little bit. Do you agree that the question of whether Sherwood is subject to Title IX, apart from the contractual promise, which wouldn't be a federal matter for me to say. As a federal matter, the question is dependent on whether Sherwood received any federal money. Yes, that's one of the essential issues of this appeal. In this record, I'm unable to find any evidence that Sherwood either received federal money, or that even the aid who worked there, not with her clients, but with some of her students, was federally funded. Can you point me to any evidence in this record that suggests that Sherwood either received federal money, or that the aid was funded federally? In the district, you received federal money. Did you receive it yourself? No, we did not receive it in the district. So the federal money, I think it comes down to the accounting, and this is where- Oh, I thought you put this. Somebody touched on this. Tell me where in the record there's any evidence that Sherwood was a beneficiary of federal money. The record is incomplete in that regard because- Was it your burden to establish that? Absolutely, but I think in what goes into his opinion, in order is the certified accounting records that were provided to the court. The court took that evidence. It took also the evidence of the declaration of the accountant for the school district, and the court weighed that evidence and decided, which is a genuine issue of material fact, which was more persuasive in the record. I don't see weighing here. Totally weighing would be there's some evidence of federal aid that Sherwood, and there's some evidence that maybe it didn't, and I'm believing one guy and not the other. I'm looking for what evidence, if you submit it, that take it as true and establishes that Sherwood received any federal money. I do have a hard time doing that all the time. The best evidence that is in the record is the certified financial accounting records that show that Sherwood School District receives federal money. It goes into the general fund. Sherwood Charter School District gets funded out of the general fund. So I cannot point to any specific federal monies that came from the federal government. Okay. That's what I wanted to ask. It's funding, as I read the statutes, it receives a certain percentage of what we would call the average of the incomes. But the percentage is student per capita. So your argument is because the general fund is comprised both of federal funds and state funds, therefore the charter school must have received some federal funds? Absolutely. And I think if you look at the statutory scheme, if you look at the contract between Sherwood Charter School and the Sherwood School District, for purposes of funding, they are nearly one in the same. The money, there's no significant distinction between Sherwood Charter School and the Sherwood School District, and I don't believe it's any question or issue that the Sherwood School District receives federal money. There's an entire statutory scheme and a lot of math, frankly, that goes into state law grants. Those go through the state and flow down to school districts. School districts spend that money. There is also some direct funding. For instance, the IDEA, Individuals with Disabilities Education Act, those are specific year-marked funds. And also there's a two-day thread that would tell us, for any jurisdiction, that would tell us that when a general school district receives some kind of federal funds, that every school underneath that school district is now covered by Title IX. I can't speak to quite a specific case on that, but what I can direct the court to is the definitions of Title IX, as well as the U.S. Department of Education defines the scope of Title IX to specifically include charter schools. So the U.S. Department of Education considers charter schools, but that really doesn't answer Judge Bybee's question. A charter school takes federal money. It's a public school. It's subject to whatever federal restrictions come with it. The question is, is there any case that says because the parent district takes money, and take it out of the context of charter schools, just like any public school, all public schools in the district are subject to Title IX? It might be a good policy. I'm just going to read this again. Every school in Oregon, every public school in Oregon, subject to Title IX. It seems like that's the kind of thing that might have been decided in Oregon, and it might have been decided someplace else in the United States. I am not aware of that case. I believe that every school district, every public school district in Oregon is subject to Title IX. It has to be a school district of individual schools. There's a school in Oregon, school districts, individual schools are not independent entities. They're independent entities of school districts. If you sue an individual school district, see, if you sue the school district, if you sue the district, you have a different case. If you chose to sue an individual school, you say, because I'm an individual entity, I'm having a difficult time. So a charter school is a distinct entity from the Herowood School District. It exists by a small district, but in itself, it's a distinct entity. If I may, there is one case that I found out yesterday, which is Benny v. Martha's Vineyard Public Charter School, U.S. District, Massachusetts, 13CV11273, decided January of 2014. And that simply held that a planned breach of contract against a public charter school and the district court allowed that claim to be made. Can you make sure you submit, in accordance with our rules, a 28-J letter? So if your opponent doesn't have the case, we have a way to do it for you. You also can provide a citation to the clerk after we've completed our proceedings here today, copy to counsel, and copy for all of us. I will do so. Thank you. I don't understand. You have a federal claim, which is a Title IX claim. Yes. A state law breach of contract claim. Yes. And you have a state law negligence in the first year of martial law distress. I did plead that. I did not appeal that issue. Okay. Thank you. That was my last question. So as to that claim, you're content with the district court's dismissal of it? As to that claim, we did not appeal it. Okay. It wasn't clear to me if anything else matters. Thank you for that clarification. The issue, I think, that is raised by that is simply the publicist's claim and the status of a student in the school district. What is that relationship? And frankly, it's a special relationship. Right. But the district court dismissed that claim. The district court dismissed that. You're not seeking a review of my lawsuit, are you? I'm not. Not the intentional inflection of emotional distress. You're seeking review of the negligence component. That was my difficulty. It's negligent. What I read your complaint is for negligent inflection of emotional distress. It's not. There were actually separate claims. Separate negligence claim. Separate negligence claim. I'm not seeking a separate intentional inflection of emotional distress claim. Do other public schools in Oregon have student analysts? Yes. But that would not create a contact there as well. It's a question to you. You said that public schools would not be subject to the range of contact claim. No. It brings us back to Oregon's compulsory school state laws, ORS 339010 and 020. And those statutes say that every student between the age of roughly 5 and 6 and 18 years old must attend school, either a public school, home school, or private school, or frankly, charter school. Because on the notice that you mentioned charter schools, it does not mention charter schools. Because charter schools are considered to be public schools. Is that correct, though? I don't know if I'm correct. You argued they're subject to Title IX. The argument is subject to Title IX. They're subject to the full district right. They are subject to the full district right. They are going to a public school. Yes. But we've got this kind of odd thing that charter schools fit in an odd space, which is they're a creature of both statute. ORS 3380 is a statute on Oregon charter schools. They also only exist by contract through schools. They have a quasi-private. This is a contract with the full district. No, yes. Except with the parents. Well, except the contract with the parents is that charter schools, unlike a public school which requires compulsory attendance, charter schools are allowed to accept or reject some students. They're not required to accept all students. It seems to me that that doesn't speak to magnet schools. Do you have magnet schools in Oregon? Magnet schools do exist in Oregon. However, those are magnet schools, to my knowledge, are all regular public schools in Oregon. Does that make sense? Anybody who applies to them? No, because, though, in many of the cases, the schools are separate from any school district that I'm familiar with. Many of the magnet schools that are part of the public school system, for instance, control their enrollment by lottery. So, for example, if you had a science and technology school, they would admit everybody by lottery? To some degree, yes. So you don't have to show that you're good in science and technology to be admitted to the science and technology school? Does your school have an arts background in the fine arts program? Some of the requirements vary from district to district. Some of them depend on whether that particular magnet school is a neighborhood school and others. I think that the issue here, and I've got just a few seconds left, is if we look at the law that's cited on the special relationship, you look at the Ohio casualty case, where the Oregon Supreme Court specifically held that this relationship between a parent and child is a fiduciary relationship. We take that the next step to the Parnonia case, Fasolari, and the other case cited, and what we have is a clear line of cases that show that the relationship between a parent and child is a fiduciary nature when a parent places their child into a school. The local parents get around for a long, long time before they get charter schools. Yes. It doesn't quite explain why charter schools are different from other public schools. Charter schools are different from other public schools because they are creatures of contract and because they have the authority to accept or reject students, which changes the nature of compulsory education state into a contractual school arrangement. Thus, the nature of the relationship has now fundamentally changed from one where they're required to attend their neighborhood school to a school of choice or a charter school where it is governed by a contract because it's an offer, and it's an acceptance, consideration, or detriment, or it's relied upon. In this case, there was a fee paid. And the fee was just the $275 that was authorized by statute, and that all public schools may charge as well. Absolutely. Okay. All right. I think we have to end our argument. Thank you, Mr. Brock. Thank you. Thank you. This is the clerk from the Council. I'm Jenna Schrader on behalf of Independence Charter School District, the charter school as well as the school board. I'll start with the contract claim because the clerk wants to know if I answered that question. Yes, you did. Because I'm confused about the nature of the school. It seems to me that they didn't legislate for civil and equity discipline, which is that you run the school, and the school didn't properly supervise one of the students, and the student did four-injury by trial, by oath. Is a special relationship required for that kind of negligence? It just strikes me as corny when I edit negligence. You should have exercised reasonable care to imprison the student if you didn't. Why was that claim dismissed? Because Oregon's negligence law has a physical impact rule, so you can't sue for negligent inflection of emotional distress absent physical injury. The only injury here was emotional. Correct. It wasn't just emotional. That's my question. This really is negligent inflection of emotional distress. It's not a freestanding injury. Correct. And the Fasolari case that plaintiff can't counsel relies on is a negligence case, but the physical injury is a greater case against a criminal court case. No, I understand. I didn't mean to take you off track, but I was just going to forget about that. So Oregon law very clearly requires a special relationship, and it has never recognized a special relationship simply because in a public school and a student relationship there has to be something else beyond simply this duty of ordinary care. And as plaintiff has pointed to, nothing doesn't qualify under Oregon law. Under Oregon law, yes. It's a whole deal as you're going into a child. There are no special relations. Right. And that requirement isn't as high standard in the cases plaintiff cites. They're very different cases than this. The only case that's recognized this sort of thing is a circumstance in which the plaintiff was in a private school in which she was living in the home of one of the school administrators, had a special contract that they would take care of her 24-7, and they literally were like a parent to her with Lithuania. This is just a public school, a day school. There's never been any case law in Oregon ever that recognizes special relationships in the circumstances presented here. Going back to the contract claim, I don't want to belabor it,  but it is part of the compulsory school requirement. A student can attend a charter school or a non-charter school, public school as part of the compulsory school. So in a regular public school, a non-charter public school, you have no choice. You have to send your child to the local public school, yes? Some of the districts, you have to send them to your local school. Other districts allow you to choose which of the local schools you want, for magnet schools, for elementary school, there's all kinds of different ways it happens. Can you answer the question, what is this application? That's a little bit different from saying you have, if you wish, you can make a voluntary decision to attend a charter school, and the charter school can make a voluntary decision whether or not to accept you. That sounds like an operation of the voluntary meeting of the minds on the part of both parties there in a way that doesn't seem to be quite what the normal situation is with respect to an ordinary public school. And, of course, that's not the situation we have here. The application process is, I think, is anticipated by Judge Mike's questions, a function of the fact that this is a small charter school in a small building, a focused program that can't take all comers simply because of the size. And so you'll see in the excerpt that we're going to hear, it says right in here, there's a lottery to get in. Mr. Lowery testified his case was not in the program. We want you and we don't want celebs. Correct. So on page 519 of the handbook that's in front of you in the excerpt of the record, the school admission policy says, Sherwin Charter School is open to all students who apply and complete the admission and registration requirements. And they talk about going through the lottery process. Mr. Lowery testified that he went through the lottery process with their kids. They can't take all comers at a charter school any more than they can at a science. What about a math school? What about a science and technology school that goes public? I think it's the same thing. I don't think it has any impact. Is it by lottery? Some of them are. Yeah. I don't know what you mean. Some test has minimal qualifications. You have to have a doctorate scores of a certain level in order to be admitted to a science and technology school. I'm not sure if that's the case in the Oregon public schools. I think it's the same kind of thing. Let's try it. I'm familiar with the Bronx High School of Science, for example, which is a public school, but only admits those students who have very high math and science aptitude. It has tests, essentially. But it must take all comers and meet their requirements. Let's assume we had one of those. Would your case be any different? No. No, not at all. So if someone were to actually say, well, I'm sure we're in school where you only take the best and the brightest, you could just make us only take the kids with IQs of 130 or above, would there be a contract under those circumstances? No, there wouldn't. I mean, they're fulfilling their compulsory school obligation by going, and the fact that you have a parent-teacher handbook doesn't make it any more of a contract than in the more ordinary circumstances. If I understand it, you have to pay the charter school $275 or something like that, which you don't pay the public school, they pay what every public school is. I don't know if there's no evidence in the record that public schools don't charge activity fees, and, in fact, they do. This is an activity fee. The statutes permit that. They don't permit consideration of going to school. So in your circumstance, it's not a payment for going to school. Just so I'm clear, maybe this is not part of the record, but if my child is attending a public school, and the public school says you must pay an activity fee, and I say I don't want to pay an activity fee, you say that according to law it says you must pay that activity fee. According to law prohibits schools, your public schools, from accepting money for educational services because there's a compulsory requirement that students attend school. They're not allowed to collect money to go to school. They're permitted by statute to collect activity fees. So let's assume that, just to recall the situation, I'm poor, and I refuse to pay the activity fee to a public school or a charter school. What happens to me? In this case, they waive it. You ask for it to be waived. It wasn't a consequence of my denied activities. It's not a denied admission. No, you don't go to field trips, perhaps. I don't know. I'm transposing. I have some experience with this. For example, if you want to play in a football team, you know, in parents' new schools, you must pay an activity fee to close the door for the team that the school project is. Is this an activity fee that if you don't pay, you don't get to go to activities, or is this an activity fee you must pay in order to get admission to your school? Absolutely. It's not the second circumstance. You must pay it in order to get in. It's an activity fee, and the law prohibits, and Sherwood Charter School follows the law, accepting money for tuition. The only thing they're permitted to, and the only thing that the evidence shows they did collect money for, was this activity fee. But does the record indicate what would happen if the Barnes family refused to participate in this case, if the Lowry family refused to pay the activity fee? It shows that it's waived. The record shows that if requested, it can be waived. There's nothing beyond that. I mean, they didn't refuse to pay it, and the kids participated in the activities, and all of that sort of thing. It can't be the basis for a contract for educational services, which is what needs to be denied. And there's no evidence that this money was. The plaintiff never made a third-party contract claim. I don't see it in the briefs. It wasn't made below. I hear him making that now. I don't even understand how a contract with the school district would somehow cause the student parent handbook to become a contract that's enforceable. But that argument was never made. Can you address the federal funding issue? I will. In this case, the only evidence in the record is that the school, the Sherwood Charter School, did not have any federal funding. The plaintiff put in some evidence that doesn't explain really what it is, that related only to a different school year than the one in question. But we submitted in Mr. Joe Hanson's declaration, who's the CFO of the Sherwood School District, that the Sherwood Charter School did not receive any federal funds in either 2011-12 or the year in question here, 2012-2013. The unemployment list attaches the documentation of it, and there is no contrary evidence in the record. What's the evidence in the record with respect to the aid employed by the Sherwood School District that I take it attended to a student at the Sherwood Charter School? Is she federally funded? Is there any evidence of that? The plaintiff suggested in their evidence, suggested in their argument that that aid must have received aid from federal funding from IDEA. However, that evidence is not in the record, number one. When I look at the evidence that's in the record, the amount that your district spends on special services is in excess of the amount that receives federal funding, is that correct? In other words, I couldn't look at that and say, she must have been funded by federal funds, because the federal funds are exactly the amount you spent. Exactly. There's no way to tell the records that they submitted are from a different year anyway. But in any event, under the NC2A versus Smith case that we cite, the fact that a school district indirectly benefits through federal funds, such as when a district employee is placed in our school to work with the school, that's indirect, not direct federal funding. Sorry, but even that NC2A analysis would require a diverse instance. In fact, it was indirect. I'm not sure I was answering you with it. It's not. No, and they make the argument that there is, but they don't point to it. As with many of the assertions, they don't point to it, or they point to a document that's so vague it's not there. But even if it were there, we don't think under NC2A versus Smith, it makes any difference in any event. But there is absolutely no evidence, and it was Plano's burden to answer the question earlier, to create a genuine issue based on the federal funding, because that's the threshold, that's the gateway into the title line, and they simply didn't do that. They didn't refute what the school district CFO says in his declaration and the documentation. Next issue, unless you have any further questions, the district court is correct in finding that even if you got past the federal funding issue, that there was no evidence that Sherman Charter School was deliberately indifferent to sexual harassment allegations. The evidence was, and the district court found, that the school did repeatedly respond to what happened in the school and tried to remedy the situation in multiple ways. And, again, the circumstances timeframe of the brief, Plano discussed it in broad terms in over two years. Even in page eight of his brief, the allegations about what the timeframe is of the wrongful axes led him limited to a period starting in December of 2012, and they were withdrawn from the school, the kids, by December of 2012. And standard under Davis versus Monroe, as well as the sports cases, is there has to be some deliberate indifference. And this court in Oden said deliberate indifference effectively means making an official decision not to act. And it couldn't be further from the truth that that's what Sherman Charter School did here. They acted in multiple ways. And to be sure, they do not throw the problem entirely by their axe, but you don't have to. And Oden specifically says no particular remedy is required. The school is required to purge itself of all problems of sexual harassment or whatever the problem is in order to find that there was no deliberate indifference. And you need to have punishment in the way that the plaintiff wants. Because oftentimes they want to have this bad seed, bad apple expelled. And Oden, and I think you were on that panel, went out of its way to say we're not saying you have to do whatever the plaintiff wants. We're saying no particular remedy. They simply have to act and not demonstrate deliberate indifference. And that is the circumstance that we have here. In addition, there's no evidence to permit a finding that whatever harassment went on qualifies in her title line because it wasn't so severe and pervasive as to deprive the plaintiff of an educational opportunity. We have the mother emailing the school saying, oh, thanks for all that you do to the teachers. You make it fun for my daughter and you make it fun for my kids. I'm so happy you're there for us. So while there are problems, they haven't demonstrated it had any interference with their educational opportunity. So on that basis as well, the time line should go. I think Dr. Karp is correct. My time is up on this. The board has more questions. Thanks, Ms. Warren. I'm sorry we used your time, but I will allow you a minute to view it if there's something that you'd like to address. Just one small point, which is I think we have to keep in mind with this particular case, these are school children, since we voted, where we have two adults in a consensual relationship. This is a case under Title IX where you've got an adult and college students. We have children, an issue here, and an environment. And I think if you look at the timeline that was presented, and the record, you find that the year before, 2011, Mr. Lowery took his children out of birth. Mr. Lowery, there was a separation or a safety plan in place between Mr. Lowery's daughter and another student, and there were no issues that year. The year that's in question, with all the issues, that safety plan was removed. So if you look at that fact book, you have deliberate interference. The school, the charter school, it doesn't look like there's anything but deliberate interference here to me. You have teachers and administrators who are all over this. They have obligations to all of the children. They have obligations to all of the parents, and they were very, very responsive to your clients. They were deeply concerned. They were aware of the problems, aware that if a child was misbehaving with respect to other students who were not part of this litigation, it doesn't look like deliberate interference. They can't tie the kid to a tree in order to prevent it from misbehaving, but they can address things, and address things carefully, and that seems to be what they did. Absolutely, and, well, if you answer absolutely, if you answer absolutely, just give away your deliberate interference argument. If you answer absolutely, my God, I'm in a smoke yard. The issue is, the judgment is that it's absolutely not. I don't think I can be so bold. My issue is that the evidence in the deliberate interference was that there was a safety plan here before, and there were, if I assign a teacher to hound the student who was causing, who was harassing the other students, and the evidence shows that, and the evidence, as I said before, deliberate interference doesn't counsel. If the facility had teachers sit with the child who's causing the problems, and attend all of the child's classes, is that deliberate interference? But if the teacher is completely ineffective, and inattentive to what was happening in the classroom, then that teacher, then that is deliberate interference, because you've only put one of the addressing on the issue. You haven't actually addressed the issue, and this, the complaint here with the plaintiffs, I guess, which are charter schools, that their efforts and activities did not actually address the issues that were going on, and I think that the contrast is found. When you have a safety plan, or the year before, that accommodated all the students, that addressed all the students, throughout the entire school, when that safety plan is removed, that is the act of deliberate interference, because now you have a student that was having regulation issues. He was unregulated. It caused numerous problems, not only for plaintiffs in this case, but others that are in the record, and that shows that deliberate interference, that act of interference. I'd like to thank both health for the argument. Lowery v. Sherwood Charter School is submitted the last case on the oral argument calendar. It's Cuneo v. Brown.
judges: Bybee, Hurwitz, Rakoff